UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:07-CR-81 |
| V. | ) | (Phillips / Shirley) |
| | ) | |
| | ) | |
| ROBERT BENNETT, | ) | |
| | ) | |
| Defendant. | ) | |


## MEMORANDUM AND ORDER

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C.

§ 636(b) for disposition or report and recommendation regarding disposition by the District Court

as may be appropriate. This case came before the Court for a Motion Hearing on February 13, 2008.

Assistant United States Attorney Tracee Plowell ("AUSA Plowell") appeared on behalf of the

government. Attorney Norman McKellar ("Attorney McKellar") appeared on behalf of Defendant

Bennett, who was also present. Since neither party requested the opportunity to file post-hearing

briefs, the Court took this matter under advisement on February 13, 2008.

## I. ANALYSIS

The Court will address the pending pretrial motions in the order in which they were taken

up at the February 13, 2008 Motion Hearing.

### 1. Motion for Disclosure of Exculpatory Evidence

Defendant Bennett requests the disclosure of certain evidence within the possession, custody,

or control of the government which may be described as exculpatory or favorable to his defense,

including any information that may be used for the impeachment of government witnesses called to testify at trial [Doc. 43]. Defendant acknowledges this request is mainly covered by the Court's Order on Discovery and Scheduling. However, Defendant filed the motion arguing that the language of the Order on Discovery and Scheduling may not be sufficient due to the Supreme Court's narrowing the scope of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) in <u>United States v. Agurs</u>, 247 U.S. 97 (1976).

The government opposes Defendant's motion, contending the Order on Discovery and Scheduling provides the government with guidance as to what information it must provide to Defendant and the time line it must adhere to as well [Doc. 77]. The government further argues that the Sixth Circuit has stated that <u>Brady</u> does not create a constitutional right to discovery in a criminal case. As to Defendant's request for impeachment evidence, the government contends that under Sixth Circuit precedent, if the impeachment evidence is within in the ambit of the *Jencks* Act, then the express provisions of the *Jencks* Act control and the government may not be compelled to disclose that information before trial. See <u>United States v. Presser</u>, 844 F.2d 1275 (6th Cir. 1988).

The Court finds the information sought by Defendant has largely been previously addressed in the Court's Order on Discovery and Scheduling [Doc. 4]. As to Defendant's request for the criminal records of government witnesses, <u>see</u> Order on Discovery and Scheduling ¶ F. As to material to be used in impeachment of government witnesses, the Court's Order at paragraph E provides:

> The government shall reveal to the defendant and permit inspection and copying of all information and material known to the government which may be favorable to the defendant on the issues of guilt or punishment within the scope of <u>Brady v. Maryland</u>, 373 U.S. 83 (1965), <u>United States v. Agurs</u>, 427 U.S. 97 (1976) (exculpatory evidence), and <u>United States v. Bagley</u>, 473 U.S. 6676 (1985)

(impeachment evidence).  Timing of such disclosure is governed by
United States v. Presser, 844 F.2d 1275 (6th Cir. 1988).

The Court finds that it has already ordered the government to turn over materials within the scope of Brady, with the timing of such disclosures governed by Presser.  Should Defendant become aware of specific material that may be subject to this provision, he may make a specific Brady request of the government, then bring the matter to the attention of the Court if necessary. Accordingly, Defendant's Motion for Disclosure of Exculpatory Evidence **[Doc. 43]** is **DENIED**.


### 2.      Motion for Notice of Any Rule 404(b) Evidence

This motion [Doc. 49] requests any and all Rule 404(b) material the government intends to use as evidence during its case-in-chief at trial.  In response, the government argues the substance of this motion is addressed in the Court's Order on Discovery and Scheduling, which the government will comply with at the appropriate time, being seven calendar days before trial [Doc. 72].

Rule 404(b) provides that upon Defendant's request, the government, "shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice for good cause shown, of the general nature of any such evidence it intends to introduce at trial."  Fed.R.Evid. 404(b).  This Court's Order on Discovery and Scheduling at paragraph I states that "reasonable notice" under Rule 404(b) is deemed to be seven calendar days before trial unless the Court notes otherwise.  Accordingly, Defendant Bennett's Motion for Notice of Any Rule 404(b) Evidence **[Doc. 49]** is **DENIED**.

### 3.    Motion For Evidence Arguably Subject to Suppression under Rule 12(b)(4)(B)

Defendant Bennett's motion, pursuant to Fed.R.Crim.P. 12(b)(4)(B), requests the Court to compel the government to "timely disclose evidence" it intends to use in its case-in-chief as trial or that would otherwise be subject to suppression under Fed.R.Crim.P. 12(b)(3)(C) [Doc. 45]. Defendant contends he filed this motion in anticipation of discovery and to put the government on notice that if any discoverable information is received by the government after the discovery deadline, he is still entitled to receive it.

The government, in response, argues that the scope of Fed. R. Crim. P 12(b)(4)(B) is limited and only requires the government give notice to the defendant of its intent to use certain evidence [Doc. 73]. The government contends the rule limits disclosure to evidence which it intends to use in its case-in-chief and further argues, in this case, discovery is not voluminous and the offense charged is straight-forward. However, the government advises the Court and Defendant that "it intends to use the evidence provided during discovery in its case-in-chief" [Doc. 73]. Moreover, at the motion hearing, AUSA Plowell advised Defendant that informant testimony will be "heavily used"; any statements to law enforcement officers will be provided with plenty of time for preparation for trial; and in accordance with an agreement made between the government and Defendant's former counsel, she will provide *Jenkcs* Act materials at least one month before trial.[1]

Rule 12(b)(4)(B) requires the government, upon request of a defendant, to give notice to the

---

[1]During the hearing, AUSA Plowell further advised Attorney McKellar that she provided previous counsel Michael McGovern with audio recordings relating to the conspiracy charge in Count 1 of the Superceding Indictment. AUSA Plowell offered to make another copy for Attorney McKellar. The Court appreciates the government's willingness to provide an additional copy of the recording. However, the Court implores Attorney McKellar to confer with previous counsel and be sure all materials needed for adequate representation have been provided.

defendant of the government's intent to use certain evidence at trial. The rule is limited in scope. By its own terms, it is limited to evidence the defendant would be entitled to discover under Rule 16 of the Federal Rules of Criminal Procedure. It also explicitly limits disclosure to evidence the government intends to use in its case-in-chief. Furthermore, this "provision contemplates motions filed in preparation for actual or potential motions to suppress evidence." United States v. Lanier, 578 F.2d 1246, 1254 (8th Cir. 1978). Rule 12(b)(4)(B) is not designed, nor intended, to be used to obtain more specific discovery than that provided by Rule 16. Rather, Rule 12(b)(4)(B) is intended to facilitate the making of pretrial suppression motions by allowing the defendant to avoid filing a motion to suppress when the government does not intend to use the evidence.

In this case, the Court finds no basis to alter an agreement between the government and former defense counsel to provide *Jencks* material one month prior to the start of trial. The Court finds this agreement is sufficient and fair to Defendant in his trial preparation. Furthermore, based on the government's representation that it has complied with the requirements of the Rule by providing defense counsel with the required information and will continue to comply with its discovery obligations, Defendant Bennett's Motion for Evidence Arguably Subject to Suppression Under Rule 12(b)(4) **[Doc. 45]** is **DENIED**.

4.     **Motion to Compel Discovery**

Defendant Bennett's Motion to Compel Discovery constitutes his formal request  for Rule 16 discovery [Doc. 54]. In particular, Defendant requests: (1) the results or reports of any scientific tests which are material to the preparation of his defense or intended for use by the government as evidence in their case-in-chief; (2) copies of all latent fingerprint or palm prints which have been

identified by a government expert witness relating to this matter; (3) all rough notes of any government agents and officers; (4) an inventory of items confiscated from Defendant on July 16, 2007, including an inventory of the U.S. currency seized; and (5) any documents or tangible items to the preparation of his defense.

As to Defendant's requests for any results or laboratory reports, the government contends [Doc. 76] the Court has already directed the government to produce such results in its Order on Discovery and Scheduling. Furthermore, the government states it has already been in communication with defense counsel regarding the tests conducted on the narcotics at issue and the backlog at the DEA lab in Florida. As to Defendant's request for copies of all latent fingerprints or palm prints, the government states no such prints exist. As to Defendant's request for a copy of the rough notes of any government agents or officers, the government contends Defendant is not entitled to these notes in discovery as they are considered *Jencks* Act materials and the government will provide them to Defendant at the appropriate time. As to Defendant's request for an inventory of the items confiscated from him on or about July 16, 2007, the government contends such an inventory was provided in the affidavit of Special Agent Nocera, which accompanied the search warrant. As to Defendant's request for a list of all document or tangible items that are material to his defense, the government contends it intends to use all items seized from Defendant as set forth in the discovery, already received by Defendant.

At the February 13 hearing, AUSA Plowell advised the Court due to a backlog and a processing error, the laboratory analysis of the narcotics took longer than expected, but that defense counsel recently received a copy. AUSA Plowell further advised the Court the "processing error" was not an error in the actual analysis of the narcotics, but a filing error: when the report was sent

back to the FBI, it was placed in the wrong file, which SA Nocera could testify to if the Court wished. AUSA Plowell also stated that while officers conducted surveillance of Defendant, no video surveillance was conducted, thus any surveillance by the officers is considered *Jencks* Act materials and not subject to discovery under Rule 16.

To the extent that the parties may resolve issues related to this information among themselves, all counsel are encouraged to resolve this issue without intervention of the Court. Should a dispute continue and counsel for Defendant is unable to view the requested information, to the extent it is in the possession of the government, Attorney McKellar is invited to seek judicial relief at the appropriate time. As to the retention of agents' rough notes, the Court has already ordered, in its Order on Discovery and Scheduling [Doc. 4 ¶ H], the relief requested by Defendant: "The government shall advise its agents and officers involved in this case to preserve all rough notes." Furthermore, the Court finds the government is well aware of its *Jencks* obligations and will provide material which falls under its scope one month prior to trial. Accordingly, Defendant's Motion to Compel Discovery **[Doc. 54]** is **DENIED**.

5.      **Motion for Disclosure of Identity and Location of Informants, Informers, and Cooperating Individuals and Motion for Disclosure of Identity of Persons Who Were Present or Participated**

Citing Roviaro v. United States, 353 U.S. 53 (1957), Defendant Bennett moves the Court to order the government to inform defense counsel, in writing, of the identities and addresses of any confidential informants, informants, witnesses, confidential sources, cooperating witnesses, or any other sources of information [Doc. 38] as well as all persons known to the government to have been present at the time of the offenses alleged in the indictment [Doc. 40]. The government opposes

Defendant's motions, arguing that Defendant's requests are beyond the scope of Rule 16 discovery and that he will be informed of the identity of testifying witnesses in accordance with the timeline set forth in the Court's Order on Discovery and Scheduling [Doc. 83]. The government also contends Defendant Bennett is simply trying to learn the identity of government witnesses, information which Defendant is not entitled to discover [Doc. 81]. Furthermore, at the hearing, the government took the position that in light of certain discovery already provided, Defendant should now be able to determine who some of their potential witnesses are.

With regard to the identities of confidential informants, the Supreme Court has recognized what has become known as the informer's privilege:

> What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and by preserving their anonymity, encourages them to perform that obligation.

Roviaro, 353 U.S. at 59 (internal citations omitted).

This privilege is limited by the requirement that criminal trials be fundamentally fair. Id. at 60. The informer's privilege must yield when the informant's identity is "relevant and helpful to the defense of an accused" or "essential to a fair determination of a cause." Id. at 60-61. This determination is subject to a case-by-case balancing of "the public interest in protecting the flow of information against the individual's right to prepare his own defense." Id. at 62. In performing this balancing, the Court should consider, among other factors, the charges, the potential defenses, and the significance of the informer's testimony. Id. The Sixth Circuit has held that danger to life of

the informant is entitled to significant weight in the balance. United States v. Jackson, 990 F.2d 251, 255 (6th Cir. 1993).

To compel the disclosure of the identity of confidential informants, a defendant must do more than speculate that knowing that person's identity would be helpful to his or her defense. See United States v. Trejo-Zambrano, 582 F.2d 460, 466 (9th Cir.), cert. denied, 439 U.S. 1005 (1978); see also United States v. Moore, 954 F.2d 379, 381 (6th Cir. 1992) (holding that "[m]ere invocation of [one's due process rights] does not automatically outweigh the public interest in protecting confidential informants"). However, the Sixth Circuit has held that an informer's "identity cannot be concealed from the defendant when it is critical to his case." United States v. Eddings, 478 F.2d 67, 70 (6th Cir. 1973) (quoting Branzburg v. Hays, 408 U.S. 665, 698 (1972)). As such,

> [N]o fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. ... depend[ing] on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

Eddings, 478 F.2d at 70. Furthermore, "disclosure has usually been required when, as in Roviaro, the informer was an active participant in the events underlying the defendant's potential liability." United States v. Sharp, 778 F.2d 1182, 1186 n.2 (6th Cir. 1985) (citing United States v. Eddings, 478 F.2d 67 (6th Cir. 1973)). However, "disclosure has usually been denied when the informer was not a participant, but was a mere tipster or introducer." Id. (citing United States v. Whitley, 734 F.2d 1129 (6th Cir. 1984)).

In this case, the Court finds the confidential informant ("CI") involved in the controlled buy of crack cocaine from Defendant Bennett on July 16, 2007 was "an active participant in the events

underlying" Defendant Bennett's potential criminal liability, and not as "mere tipster or introducer" to the police. Accordingly, the Court orders the government to disclose the identity of the CI to Defendant or make a filing with the Court to prevent such disclosure with supporting reasons, basis, and legal authority. However, since the government advised Defendant he should be able to tell the CI's identity from other discovery provided, this disclosure of the CI's identity should provide no prejudice to the government. Thus, Defendant Bennett's Motion for Disclosure of the Identity and Location of Informants, Informers, and Cooperating Individuals **[Doc. 38]** is **GRANTED**.

As a general rule, the government is not required to disclose the names of its witnesses before trial. See United States v. McCullah, 745 F.2d 350, 353 (6th Cir. 1984) (holding that the Sixth Circuit "has firmly established that defense counsel is not entitled to know in advance of trial who will testify for the government"). Furthermore, the Court finds the government is well aware of its obligations under the Order on Discovery and Scheduling and is not trying to hide information from Defendant. Should an issue arise as Defendant moves closer to trial and the government is not in compliance with its responsibilities and obligations, Defendant is invited to seek judicial relief at that time. Accordingly, Defendant's Motion for Disclosure of Identity of Persons Who Were Present or Participated **[Doc. 40]** is **DENIED.**

**6.      Motion to Compel Government to Provide Defendant with Exhibit and Witness List in Advance of Trial**

Defendant Bennett requests [Doc. 47] this Court exercise its discretion and order the government to produce a list of witnesses and exhibits it intends to use at trial as least thirty days prior to trial. Defendant argues, that while the government is not ordinarily required to produce such information, the Sixth Circuit has stated that in the rare case, early production is appropriate.

Defendant Bennett asserts his case falls within the realm of cases the Sixth Circuit had in mind since his case involves an alleged conspiracy with participants and witnesses in at least North Carolina and Tennessee. Defendant relies on United States v. Kendricks, 623 F.2d 1165, 1168 (6th Cir. 1980) (ordering disclosure of witness list thirty days before trial, exhibit list forty five days before trial) and United States v. Moss, No. 02-20145, 2005 WL 1972583 (W.D. Tenn., 06-15-05, Order, Docket No. 538, pgs. 5-7) (requiring prosecution to provide the defense with its witness list thirty days prior to trial and exhibit list forty five days prior to trial).

The government, in response, argues that Defendant is not entitled to know before trial whom it will call to testify [Doc. 82]. The government cites to a number of Sixth Circuit cases holding that a defendant is not entitled to compel production of the government's witness list. United States v. Perkins, 994 F.2d 1184, 1190 (6th Cir. 1993); United States v.McCullah, 745 F.2d 350, 353 (6th Cir. 1984); United States v. Algie, 667 F.2d 569, 571 (6th Cir. 1982). The government further argues that Fed.R.Crim.P. 16 does not provide for the routine discovery of witness lists.

In Kendricks, the issue of a witness list arose in the context of a remedy. The trial court had ordered the production of such a list and the government failed to comply with the court's order. The Kendricks court was called upon to address the absence of any sanction for the government's disregard of the trial court's order and opined:

> It is well recognized that defendants cannot obtain lists of prosecution witnesses as a matter of right, although the district court has discretion to order the prosecution to produce it. We do not condone the prosecution's failure to comply with the district court's order. However, the fashioning of a proper remedy to ameliorate any potential prejudice to the defendant's ability to prepare an effective defense is within the district court's discretion. In as much as there were few witnesses, their identity was revealed by other discovery, and the prosecution's theory of the case was relatively straightforward, we do not believe the district court abused its

discretion in denying the motion to dismiss.

Kendricks, 623 F.2d at 1168-69 (citations omitted).

In Moss, the pretrial motions and pleadings, as well as the Order cited by Defendant Bennett, describe a terrible tangle of discovery-related issues. Moss involved one disclosure of 167 banker boxes of papers, referenced as but one example by Judge Donald as she described the unusual chronology of the case, along with data on twenty desktop computers, seven mainframe computers, and materials reportedly in the possession of two foreign governments. Moss, 2005 WL 1972583, *1 (W.D. Tenn. June 15, 2005).

"Ordinarily, a defendant is not entitled to a list of the names and addresses of the government's witnesses." United States v. Perkins, 994 F.2d 1184, 1190 (6th Cir.), cert. denied, 510 U.S. 903 (1993) (citing Fed.R.Crim.P. 16). This rule is tempered by the government's obligation under Brady v. Maryland, 373 U.S. 83, 87 (1963), to provide defendant with information that is favorable to his defense and material to either guilt or punishment. The government, in the present case, has acknowledged its duties under Brady and "acts at its own peril" if it fails to provide Brady materials in a timely fashion. See United States v. Presser, 844 F.2d 1275, 1281 (6th Cir. 1988).

There appears to be some tension in the case law regarding whether the Court has the discretion to order the government to produce a witness list even though Rule 16 does not require it. Compare United States v. Kendricks, 623 F.2d 1165, 1168 (6th Cir. 1980) (holding that the district court has the discretion to order the prosecution to produce a witness list), with Presser, 844 F.2d at 1285 (holding that Rule 16 provides no authority for compelling the government to disclose Brady material or any other evidence not required by the pretrial rules). Even in holding that Rule 16 does not allow for discovery beyond its scope, the court has noted that "a trial court may have

some inherent power to enter specific orders compelling the disclosure of specific evidence when justice requires it," although it may not disregard the specific statutory provisions such as the *Jencks* Act. <u>Presser</u>, at 1285 n. 12.

Assuming that this Court has discretion to order disclosure of the government's witness list, the Court finds that Defendant Bennett's case does not present circumstances so unusual as to warrant such an order. Certainly, this Defendant would be better prepared to meet the government's accusations if he had more information about the facts, witnesses, and exhibits that may come up at trial. This, however, does not distinguish Defendant Bennett from most, if not all, criminal defendants. The Constitution does not require the prosecutor to share all useful information with the Defendant. <u>See</u> <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case.). Defendant Bennett's contention that he needs the list of witnesses in order to investigate the case and prepare for cross-examination is insufficient in light of the government's compelling interest in protecting confidential informants. Thus, the Court does not find that justice requires disclosure of a witness list in the present case. As to a list of the government's exhibits, Defendant Bennett has demonstrated no specialized need for a list in advance of trial that would justify this Court ordering discovery beyond that already provided for in the Order on Discovery and Scheduling. Accordingly, Defendant Bennett's Motion to Compel the Government to Provide Defendant with Exhibit and Witness List in Advance of Trial **[Doc. 47]** is **DENIED**.

### 7.     Motion to Preserve and Produce Drugs Seized

Defendant Bennett requests the government preserve and produce for inspection all narcotics

that were seized in furtherance of the investigation of his case so that the narcotics are available for inspection and testing by individuals of his own choosing [Doc. 59]. The government contends the Court's Order on Discovery and Scheduling already direct it to permit Defendant to inspect, copy, and test any tangible item which will be used during its case-in-chief and will comply with its responsibility under that Order. Accordingly, in light of the government's representation that it will comply with this Court's Order. Defendant Bennett's Motion to Preserve and Produce Drugs Seized **[Doc. 59]** is **DENIED**. Should a problem arise in Defendant's ability to inspect the narcotics, Defendant is invited to file another motion advising the Court of the specific issue and seek judicial relief at that time.

### 8.      Motion for Hearing on Expert Testimony and Disclosure of Documents and Things

Defendant Bennett requests [Doc. 34] this Court hold a <u>Daubert</u> hearing to determine who, if any, government witnesses may testify at trial as an expert. <u>See</u> <u>Daubert v. Merrell Dow Pharmaceuticals Inc.</u>, 509 U.S. 579 (1993). Defendant also requests the government provide a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief. Defendant requests the summary include the witness's opinion, the bases and reasons for those opinions, and the witness's qualifications.

As to Defendant's request for this Court to hold a <u>Daubert</u> hearing, the government, in response [Doc. 75], argues the expert testimony it intends to introduce is commonplace in the Sixth Circuit and does not require a <u>Daubert</u> hearing. The government contends the following expert testimony will be offered: testimony from the chemist who conducted the laboratory analysis of the narcotics seized, an ATF Special Agent, and law enforcement witnesses with specialized knowledge

on drug transactions and conspiracies. As to Defendant's request for expert witness documentation, the government contends it will provide the information in accordance with the Court's Order on Discovery and Scheduling, no later than three weeks prior to trial.

The Sixth Circuit does not require the district court to hold a hearing to comply with <u>Daubert</u> on the admissibility of expert testimony based on scientific principles. <u>See</u> <u>Greenwell v. Boatwright</u>, 184 F.3d 492 (6th Cir. 1999). However, the Court is required, as a part of its gatekeeping function, to make an initial assessment of the relevance and reliability of the testimony. <u>Id.</u> The relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by trial. <u>See</u> <u>id.</u> The reliability requirement is designed to focus on the methodology and principles underlying the testimony. <u>See</u> <u>id.</u>

In this case, the Court finds Defendant's request for a <u>Daubert</u> hearing is premature. The government has not provided Defendant with the notice required by Fed.R.Crim.P. 16 and this Court's Order on Discovery and Scheduling signaling its intention to offer expert testimony. The government is required to provide this notice at least three weeks before trial. Because Defendant has not received any discovery regarding the expert witnesses which the government may call to testify, the Court finds there is no basis for it to conduct a pretrial <u>Daubert</u> hearing at this time. Furthermore, <u>Daubert</u> hearings are not conducted as a matter of course, just because an expert is involved, but only if Defendant sets forth a good faith basis for conducting the same.

Furthermore, Federal Rule of Criminal Procedure 16(a)(1)(G) [Expert Witness] states "At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief." Furthermore, the Court's Order on Discovery and Scheduling

[Doc. 4, ¶ A(3)] instructs the government to turn over to the Defendant:

> Results or reports of physical or mental examinations, and of scientific tests, including, without limitation, any handwriting analysis or experiments, which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial, and, as soon as possible but at least three weeks before trial, unless the Court orders otherwise.

To the extent that Defendant argues that he is entitled in discovery to a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief, the Court agrees. Moreover, the Court believes that such evidence should be produced at the earliest opportunity so as to assist the defense in preparing and/or filing motions for a <u>Daubert</u> hearing on the admissibility of that testimony. Nonetheless, the Court finds that it has already ordered the government to turn over the discovery materials which Defendant seeks in his motion in its Order on Discovery and Scheduling, which requires the government to provide to Defendant at least three weeks prior to trial any evidence discoverable under Rule 16(a)(1)(G). The present case is set for trial before District Court Judge Thomas Phillips on May 14, 2008. To the extent Defendant seeks earlier disclosure of discovery under Rule 16(a)(1)(G), the Court finds no reason to disturb the time frame provided for in the Order on Discovery and Scheduling. Accordingly, Defendant's Motion for Hearing on Expert Testimony and Disclosure of Documents and Things **[Doc. 34]** is **DENIED**.


9.      **Specific <u>Brady</u> Motion No. 1 for Disclosure of Documents and Things**

In this motion, Defendant Bennett requests a plethora of "exculpatory information of which the United States is aware or by the exercise of due diligence can become aware" [Doc. 42]. The government, in response, argues it will abide by the requirements of <u>Brady</u> and its progeny and

provide the information it is required to at the appropriate time [Doc. 74].

To the extent any information requested by Defendant falls within the scope of <u>Brady v. Maryland</u>, the government is directed to provide that information to Defendant Bennett. To the extent the requested material contains exculpatory information within the purview of the Court's Order on Discovery and Scheduling, the government is directed to provide that information as well to Defendant Bennett. Accordingly, Defendant's Specific <u>Brady</u> Motion No. 1 for Disclosure of Specific Items of Impeaching Information Relating to Cooperating Individuals **[Doc. 42]** is **DENIED**.

### 10. Motion in Limine to Preclude Admissibility of Prior Convictions

In his motion, Defendant Bennett asks the Court to preclude the use of his alleged prior felony convictions should he elect to testify at trial. Defendant Bennett first argues that there is no indication that the convictions involve dishonesty or false statement as required by Fed.R.Evid. 609(a)(2). Defendant Bennett further asserts any probative value is outweighed by the prejudicial effect of the evidence since the alleged prior convictions involve controlled substances; are almost ten years old; are not close in time to the charged offense in this matter; and is improper propensity evidence. <u>See</u> Fed.R.Evid. 609(a)(1), 609(b). Defendant Bennett further asserts that Rule 404(b) as explained in <u>United States v. Haywood</u>, 280 F.3d 715, 721-25 (6th Cir. 1991), bars the use of a prior felony drug conviction to impeach the accused on trial for a drug offense. Defendant Bennett argues that a pretrial determinations of the use of his prior convictions is appropriate and necessary to his trial preparations.

The government asserts Defendant Bennett has the following criminal convictions: (1) on

January 12, 1999, a felony conviction for distribution of crack cocaine in the United States District Court for the Eastern District of Tennessee; and (2) on April 29, 1999, a felony conviction for possession with intent to distribute less than ½ gram of crack cocaine and a felony conviction for aggravated assault in the Criminal/Circuit Court of Knox County, Tennessee [Doc. 79]. The government requests this Court reserve ruling on this motion for the trial court on the grounds that only in the context of trial testimony can the court conduct the balancing test of probative value and prejudicial effect.

The Federal Rules of Evidence, at Rule 609, provide for impeachment by evidence of conviction of certain crimes. Rule 609 follows the weight of traditional authority in its delineation of the convictions which may be utilized by the government: a crime punishable by imprisonment in excess of one year (felony conviction) or a crime involving an act of dishonesty or false statement. See Fed.R.Evid. 609(a)(1) and (2). Where the witness is the accused in a criminal trial, the court must make an additional finding before use of the first class of convictions, a felony conviction, to impeach, that is the Court must find that the probative value of admitting this evidence outweighs the prejudicial effect to the accused. Fed.R.Evid. 609(a)(1). The Court finds, in light of the balancing test which must be conducted since the testifying witness is the accused, this motion is more appropriately to be determined by the District Court. Thus, the Court reserves for the District Court the issue of whether or not to preclude evidence of Defendant Bennett's prior felony convictions for impeachment purposes.


11.     **Motion for Pretrial Written Notice of Any Impeaching Conviction Relating to the Accused**

In his motion, Defendant Bennett requests the government be ordered to provide him with

18

written notice of any impeaching conviction relating to him that it intends to use against him [Doc. 51]. The government, in response, argues it intends to comply with the requirements of Fed.R.Evid. 609, which requires written notice of such conviction if the conviction is greater than ten years old [Doc. 78]. Furthermore, in its motion, the government laid out the specifics of Defendant's prior convictions and also advised the Court it provided Defendant with copies of the judgments. Accordingly, the Court finds the notice provided to Defendant is sufficient, thus his Motion for Pretrial Written Notice of Any Impeaching Conviction Relating to the Accused **[Doc. 51]** is **DENIED**.

### 12. Motion for a Bill of Particulars

Defendant Bennett, pursuant to Fed.R.Crim.P. 7(f), requests [Doc. 52] the Court order the government to provide him with a bill of particulars with regards to Count One of the Superseding Indictment and seeks the following particulars:

1. Specific dates, approximate time of day, exact location of the predicate acts of the offense which the government relies on as overt acts in furtherance of the charged conspiracy, as well as the name(s) of the co-conspirator(s) alleged to have acted in concert with Defendant;

2. The location, within and outside of the Eastern District of Tennessee, where the Defendant and/or co-conspirators traveled and were sent to in furtherance of the alleged conspiracy;

3. The identity of those "other persons" referenced in Count 1 of the Superseding Indictment;

4. The specific dates, approximate time of day, and exact locations that this Defendant knowingly and intentionally distributed and possessed with intent to distribute cocaine base and cocaine hydrochloride to persons in East Tennessee and elsewhere;

5.      The identity of those persons who took possession of cocaine base and cocaine hydrochloride from this Defendant in East Tennessee and elsewhere;

6.      The "elsewhere" locations, other than East Tennessee, wherein cocaine base and cocaine hydrochloride were distributed as part of the alleged conspiracy;

7.      How and in what manner Defendant Bennett "did combine, conspire, confederate, and agree" with other persons to distribute, and to possess with intent to distribute, 5 kilograms of more or cocaine and 50 grams or more of cocaine base, also known as crack, whether by formal agreement, signed documents, course of conduct or otherwise, including the act or acts alleged to have formed the basis of such conspiracy, confederation, or agreement;

8.      Particularize the precise location of each and every act described in response to Request No. 7 and the name of each and every person other than the Defendant involved in each act;

9.      Particularize the precise amount of cocaine and crack associated with each and every act described in response to Request No. 7.

The government opposes Defendant's motion [Doc. 68], arguing that the charges against Defendant as set forth in the indictment, as well as the discovery already provided, are specific enough to protect his double jeopardy rights, and that the indictment informs Defendant of the nature of the charges against him with sufficient precision to prepare for trial. Furthermore, at the motion hearing, the government informed the Court that they will present proof that Defendant Bennett was actively selling drugs during the forty-four months alleged in Court 1 of the Superseding Indictment and that the location included in the "elsewhere" in the Superseding Indictment includes the Eastern District of Tennessee and the Eastern District of North Carolina.

Federal Rule of Criminal Procedure 7(f) states that "[t]he court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 10 days after arraignment or at a later time if the court permits. The government may amend a bill of

particulars subject to such condition as justice requires." Fed.R.Crim.P. 7(f) further states "A bill of particulars is meant to be used as a tool to minimize surprise and assist defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes. It is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir. 1993) (citations omitted). The granting of a bill of particulars is within the Court's discretion. See id. (holding that the appellate court reviews the denial of a bill of particulars for an abuse of discretion). The level of detail in the indictment can be a basis for denying the motion for a bill of particulars. Id. Additionally, "a defendant is not entitled to a bill of particulars with respect to information which is available through other sources." United States v. Paulino, 935 F.2d 739, 750 (6th Cir. 1991), superseded on other grounds by statute, United States v. Caseslorente, 220 F.3d 727 (6th Cir. 2000) (on sentencing issue).

### A.    *Information Regarding Overt Acts*

Defendant first seeks information regarding the dates, times, and locations of any overt acts committed in furtherance of the conspiracy. "[A] defendant is not entitled to discover all the overt acts that might be proven at trial." Salisbury, 983 F.2d 1375. Accordingly, the Court finds that Defendant Bennett is not entitled to a bill of particulars regarding the alleged overt acts of the conspiracy.

### B.    *Locations Within and Outside the Eastern District of Tennessee*

Defendant also seeks the locations, within and outside of the Eastern District of Tennessee, where he and his co-conspirators traveled to in furtherance of the alleged conspiracy. As AUSA Plowell explained during the motion hearing, the location of the conspiracy includes the Eastern District of Tennessee and the Eastern District of North Carolina. Accordingly, the Court finds that

Defendant Bennett is not entitled to a bill of particulars regarding the locations traveled given the information revealed at the motion hearing.

<b>C.      Identity of "Other Persons" Referenced in Count 1 and Identity of Persons Who Took Possession</b>

Defendant next seeks the identities of witnesses to the alleged overt acts, the identity of any government witnesses, and the identity of any co-conspirators with whom Defendant is alleged to have acted in concert with or interacted with.  The Sixth Circuit has held that "the Government is not required to furnish the name of all other co-conspirators in a bill of particulars."  United States v. Crayton, 357 F.3d 560, 568 (6th Cir.) cert. denied, 542 U.S. 910 (2004).  Furthermore, "a defendant is not entitled to a list of the names and addresses of the government's witnesses." United States v. Perkins, 994 F.2d 1184, 1190 (6th Cir.) cert. denied, 510 U.S. 903 (1993).  Accordingly, the government is not required to produce the names of any unindicted co-conspirators or other witnesses present when Defendant participated in the overt acts of the conspiracy.

<b>D.      Dates of and Defendant's Role in Alleged Conspiracy</b>

Defendant seeks information regarding when he is alleged to have knowingly and intentionally distributed and possessed with the intent to distribute cocaine base and cocaine hydrochloride and in what manner he participated in the conspiracy.

The Sixth Circuit has approved the defendant knowing the provision of the dates that a defendant is alleged to have conspired.  See e.g., United States v. Rey, 932 F.2d 1217, 1222 (6th Cir. 1991) (observing that the defendant knew the relevant dates in holding that he was not entitled to know the names of co-conspirators); United States v. Fears, 450 F. Supp. 249, 251 (E.D. Tenn. 1978)

(directing, without further analysis, the government to file a bill of particulars giving the date and approximate hour the defendant allegedly made the telephone call charged in the indictment). On the other hand, the failure to provide the precise date that a defendant joined a conspiracy when the indictment alleged it lasted from "early 1987 to November 17, 1987," was not error because "the indictment was not so vague that [the defendant] could not discern the nature of the charges pending against him and the time frame in which the alleged acts occurred, or that the indictment did not provide him with adequate information to prepare a defense." United States v. Hayes, No. 88-5967, 1989 WL 105938, at * 3 (6th Cir. Sept. 14, 1989), cert. denied, 493 U.S. 1030 (1990).

While this Court has previously taken issue with indictments that allege participation in a conspiracy over a lengthy period of time without providing more specific information, this Court finds the government's representation to Defendant stating his involvement in the alleged conspiracy is every day of the forty-four month period alleged in the Superseding Indictment is sufficient information. Accordingly, Defendant's Motion for a Bill of Particulars **[Doc. 52]** is **DENIED**.

### 13.    Motion for a Hearing on the Existence of a Conspiracy

Defendant Bennett moves [Doc. 36] the Court, pursuant to the Fifth and Sixth Amendments to the United States Constitution; Bourjaily v. United States, 483 U.S. 171, 180 (1987); United States v. James, 590 F.2d 575 (5th Cir.), cert. denied, 442 U.S. 917 (1979); and United States v. Vinson, 606 F.2d 149, 152-53 (6th Cir. 1979), to conduct a pretrial hearing to determine whether the government can satisfy its burden of proof on the existence of a conspiracy before any co-conspirator statements may be admitted in the government's case-in-chief at trial.

The government opposes a pretrial determination on this issue [Doc. 80].  The government recognizes that before it can take advantage of the co-conspirator exception of the hearsay rule, it must show by a preponderance of the evidence: (1) that a conspiracy existed; (2) that the defendant against whom the hearsay is offered was a member of the conspiracy; and (3) that the hearsay statement was made in the course of and in the furtherance of the conspiracy.  Vinson, 606 F.2d at 152.  Whether the offering party has made the requisite showing is a question of the fact for the Court to decide.  Fed.R.Evid. 104(a); United States v. Maliszewski, 161 F.3d 992, 1007 (6th Cir. 1998), cert. denied, Villareal v. United States, 525 U.S. 1183 (1999).

The Sixth Circuit has approved three potential procedures for resolving this issue:  (1) holding a pretrial hearing, (2) requiring at trial that the government present evidence of the conspiracy before presenting the co-conspirator's statement, and (3) allowing the government to present the statement before proving the conspiracy at trial, but instructing the jury that the government must prove the conspiracy before it can consider the statement.  Vinson, 606 F.2d at 152-53.  However, the Sixth Circuit has criticized the first alternative, a pretrial hearing. as burdensome, time consuming, and uneconomic.  Id.  The more practical approach, and the one customarily adopted by this district is the third option listed, which is to permit the government to present the hearsay statements of this nature subject to a later determination of their admissibility by a preponderance of the evidence.  In any event, Defendant's motion relates directly to trial procedures and the admissibility of evidence at trial and will be addressed by the trial judge, District Judge Thomas W. Phillips.  Accordingly, the undersigned **DENIES** Defendant's motion **[Doc. 36]**, to the extent he seeks a pretrial hearing at this time.  Judge Phillips will decide whether he desires to choose an option besides the third option before or during trial, as he deems appropriate.

**14.    Motion for Pretrial Hearing to Determine the Admissibility of Audio Recordings**

Defendant Bennett's anticipatory motion [Doc. 55] requests, in the event the parties are unable to stipulate to the admissibility of audio recordings, this Court conduct a pretrial hearing to determine the admissibility of the recording and any transcript that might be prepared, pursuant to United States v. Robinson, 707 F.2d 872 (6th Cir. 1983).  The government, in response, [Doc. 71] argues Defendant's motion is premature in light of this Court's directive in its Order on Discovery and Scheduling, ¶ M.  The government contends the Order directs the parties to meet and confer and devise a plan for authentication of the transcripts and recordings and requests the parties make every effort to stipulate to the authenticity without the Court's intervention.  The government advises the Court that the parties have not met to try to stipulate to the authenticity, thus Defendant's motion is not ripe.

The Court directs the government to ensure the audio copy provided to defense counsel is audible and accurate.  The Court further directs the government to make the first effort to compile a transcript from the audio recording and provide a hard copy to Defendant.  The Court then directs Defendant and his attorney to review the transcript and compare it to the copy of the audio recording received from the government.  If, at that time, the parties are unable to reach on consensus on the material of the audio recording, the Court will review the recording and hold a Robinson hearing.  Accordingly, Defendant's Motion for Pretrial Hearing to Determine the Admissibility of Audio Recording **[Doc. 55]** is **DENIED**.

## II.    CONCLUSION

For the foregoing reasons as outlined above, it is **ORDERED**:

(1) Defendant's Motion for Disclosure of Exculpatory Evidence **[Doc. 43]** is **DENIED**;

(2) Defendant's Motion for Notice of Any Rule 404(b) Evidence **[Doc. 49]** is **DENIED**;

(3) Defendant's Motion for Evidence Arguably Subject to Suppression Under Rule 12(b)(4) **[Doc. 45]** is **DENIED**;

(4) Defendant's Motion to Compel Discovery **[Doc. 54]** is **DENIED**;

(5) Defendant's Motion for Disclosure of the Identity and Location of Informants, Informers, and Cooperating Individuals **[Doc. 38]** is **GRANTED**.  His Motion for Disclosure of Identity of Persons Who Were Present or Participated **[Doc. 40]** is **DENIED**;

(6) Defendant's Motion to Compel the Government to Provide Defendant with Exhibit and Witness List in Advance of Trial **[Doc. 47]** is **DENIED**;

(7) Defendant's Motion to Preserve and Produce Drugs Seized **[Doc. 59]** is **DENIED**;

(8) Defendant's Motion for Hearing on Expert Testimony and Disclosure of Documents and Things **[Doc. 34]** is **DENIED**;

(9) Defendant's Specific <u>Brady</u> Motion No. 1 for Disclosure of Specific Items of Impeaching Information Relating to Cooperating Individuals **[Doc. 42]** is **DENIED**;

(10) Defendant's Motion in Limine to Preclude Admissibility of Prior Convictions **[Doc. 99]** is **RESERVED FOR RULING BY THE DISTRICT COURT**;

(11) Defendant's Motion for Pretrial Written Notice of Any Impeaching Conviction Relating to the Accused **[Doc. 51]** is **DENIED**;

(12) Defendant's Motion for Bill of Particulars **[Doc. 52]** is **DENIED**;

(13) Defendant's Motion for a Hearing to Determine the Existence of a Conspiracy **[Doc. 36]** is **DENIED**;

(14) Defendant's Motion for Pretrial Hearing to Determine the Admissibility of Audio Recordings **[Doc. 55]** is **DENIED**.

**IT IS SO ORDERED.**

                                   **ENTER:**


                                     ___s/ C. Clifford Shirley, Jr.___
                                   United States Magistrate Judge