# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 3:07-CR-81 |
| ) | (Phillips) |
| ROBERT BENNETT ) | |

## MEMORANDUM AND ORDER

On December 15, 2008, a jury found the defendant, Robert Bennett, guilty of the following: (1) conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine hydrochloride and 50 grams or more of crack cocaine; (2) distribution of five grams or more of crack cocaine on or about July 16, 2007; (3) possession with intent to distribute five grams or more of crack cocaine on or about July 16, 2007; (4) possession of a firearm in furtherance of drug trafficking; and (5) possession of a firearm by a convicted felon. This matter is before the court on defendant's motions for judgment of acquittal, or, in the alternative, for a new trial [Docs. 148, 157, 160]. The government has responded in opposition [Docs. 150, 161,162] stating that because there was overwhelming evidence of defendant's guilt on all counts, his motions should be denied. For the reasons which follow, the defendant's motions will be denied and his conviction affirmed.

**Standard of Review**

This court reviews a defendant's sufficiency of the evidence claim to consider "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *United States v. Copeland,* 321 F.3d 582, 600 (6th Cir. 2003). In undertaking this analysis, this court neither independently weighs the evidence, nor judges the credibility of witnesses who testified at trial. *United States v. Talley,* 164 F.3d 989, 996 (6th Cir. 1999). The court "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Fusero,* 106 F.Supp.2d 921, 926-27 (E.D.Mich. 2000).

A.  Sufficient evidence supports defendant's conviction for conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine hydrochloride and 50 grams or more of crack cocaine.

Defendant first challenges his conviction as to Count One on the basis that the government failed to produce expert evidence concerning his alleged possession or distribution of cocaine base or cocaine hydrochloride during the conspiracy time frame of 2003 to August 2006. In order to convict defendant of Count One, the jury had to find beyond a reasonable doubt that (1) the defendant agreed with at least one other person who was not an agent of the government to distribute and possess with intent to distribute a controlled substance, (2) the defendant entered the conspiracy knowingly and voluntarily, (3) the controlled substance involved in the conspiracy was five kilograms or more of a

mixture and substance containing a detectable amount of cocaine hydrochloride and fifty grams or more of a mixture and substance containing a detectable amount of cocaine base, and (4) defendant participated in the conspiracy.

It is well-settled that circumstantial evidence can be used to prove that a controlled substance is in fact what it is alleged to be. *United States v. Schrock,* 855 F.2d 327, 334 (6th Cir. 1988) ("So long as the government produces sufficient evidence, direct or circumstantial, from which the jury is able to identify the substance beyond a reasonable doubt, the lack of scientific evidence is not objectionable.") Charlesena Warner, Ray Alston and Dondi Warner testified about their trips to deliver cocaine and money back and forth from North Carolina to Knoxville. They delivered the cocaine to the defendant. Each time, the defendant wanted more cocaine. They were going approximately three times a month for almost two years, one kilogram at a time, then two, then three, then between four and eight. They also testified that defendant had a practice of cooking up a portion of each kilogram of cocaine into crack to test its purity. Over the time frame of the conspiracy, this would amount to 144 kilograms of cocaine and 18 kilograms of crack. Warner also testified that defendant would front cocaine to her for resale.

Charles Elder, defendant's cousin, testified that starting in 2004, defendant would give him crack cocaine on credit for resale. Elder testified that he obtained crack cocaine from defendant 20-30 times. When he met with defendant, Elder testified that defendant would be sitting in a vehicle outside his home, and he would get into the car with

defendant to buy the crack cocaine. Bennett kept the cocaine in the center console of his vehicle. In 2006, Elder testified that he met defendant in his vehicle outside a residence on Fifth Avenue, or outside defendant's mother's house to purchase crack cocaine. He purchased crack cocaine from defendant 10-15 times in 2006. This circumstantial evidence, without the need for scientific evidence, was sufficient to find defendant guilty of conspiracy to distribute and possess with intent to distribute cocaine hydrochloride and crack cocaine.

Next, defendant argues the government failed to establish that anything more than a buyer-seller relationship existed. Defendant asserts that a mere buyer-seller relationship alone is insufficient to establish a conspiracy. *United States v. Brown*, 332, F.3d 363, 373 (6th Cir. 2003). However, evidence of repeat purchases provides evidence of more than a mere buyer-seller relationship. *Id.* And, a large volume of drugs creates an inference of conspiracy. *See United States v. Bourjaily,* 781 F.2d 539, 545 (6th Cir. 1986). The evidence at trial established that defendant had a regular arrangement with the co-conspirators to purchase large quantities of cocaine hydrochloride, from 4-7 kilograms every two weeks for almost two years. This goes beyond a mere buyer-seller relationship and provides sufficient evidence to support the jury's verdict.

Finally, defendant argues that government witness Charlesena "Carlese" Warner testified that she bought crack cocaine from defendant in the Fall of 2003, when they first met. However, defendant testified that he was in jail during the Fall of 2003 — "I

-4-

got locked up in March the 3rd, 2003, and I got out March, February 9, 2004." Defendant avers that Warner's testimony was shown to be incorrect; therefore, defendant should receive a new trial.

The government points out that defendant cross-examined Warner on the alleged inconsistent statements and other aspects of her testimony. The jury was instructed that it was free to accept or reject any portion of a witness' testimony. The jury was not required to credit defendant's testimony over that of Warner. Moreover, the evidence need only show that the offense was committed on a date reasonably close to the one alleged. *United States v. Ford*, 872 F.2d 1231, 1236 (6th Cir. 1989). Because the evidence was overwhelmingly sufficient to prove the conspiracy alleged, defendants conviction as to Count One will be affirmed.

B.         Sufficient evidence supports defendant's conviction for possession and distribution of five grams or more of crack cocaine on or about July 16, 2007.

Defendant challenges the sufficiency of the evidence as to his conviction for possession and distribution of five grams or more of crack cocaine on July 16, 2007, because the government agents who testified at trial, did not personally witness any drug sale or "hand-to-hand buy".

18 U.S.C. § 841 provides that it is "unlawful for any person to knowingly or intentionally – manufacture, distribute, or possess with intent to distribute a controlled

-5-

substance. Thus, for Counts Two and Three, the government was required to prove that (1) defendant possessed/distributed five grams or more of cocaine; (2) defendant knew that the substance he possessed/distributed was crack cocaine; and (3) defendant intended to distribute five grams or more of crack cocaine to another person.

Here, the government produced ample evidence regarding defendant's possession and distribution of crack cocaine on July 16, 2007. Agent Mickey Nocera, Special Agent with the FBI, testified that the agents set up a buy with Vernita Nolan as the confidential informant. Prior to the buy, Nocera searched Nolan as well as her vehicle for money and drugs. Nolan was given $500 in twenty dollar bills to purchase crack, and she was given a recorder. The agents then followed Nolan to Lay Avenue, they saw her get out of her vehicle and walk to defendant's vehicle. Immediately following the buy, Nolan met the agents in a parking garage where she handed them the recorder and a bag containing a substance that appeared to be crack cocaine. The substance field tested positive for cocaine and weighed approximately one-half ounce. The agents then arrested defendant. Defendant's person was searched and agents found $2,836, and two bags of marijuana. A large ziplock bag, holding crack cocaine was found, along with a Glock pistol under the driver's side seat where defendant had been sitting. The government produced a picture taken at the scene showing the gun sticking out from underneath the driver's seat and the bag of cocaine on the floor.

Vernita Nolan testified that on July 16, 2007, she was working as an informant for the FBI. Her assignment was to buy half an ounce of crack cocaine from defendant. After meeting with Agent Nocera and receiving the buy money and a recorder, she drove her own vehicle to Lay Avenue, where Plunk was "set up" in front of his mother's house. Defendant was seated in the driver's seat, there was another individual in the passenger seat, and two guys in the back seat. She got into the back seat. She told defendant she wanted "a half" and defendant responded that it would be "five dollars", meaning $500. Defendant took the money and gave her the crack tied in a plastic bag. She left and met with the agents at a parking garage next to the police department. The agents took the crack and recorder, searched her again, and allowed her to leave. The tape recording of the "buy" was played in court. Nolan identified the voices from the recorder as her own and defendant's.

Carlos Diaz, forensic chemist for the DEA, testified that the substance seized from defendant and Vernita Nolan was crack cocaine, and weighed 11.8 grams and 35.6 grams, respectively.

Officer Todd Gilreath testified that he was part of the arrest team on July 16, 2007. After defendant got out of the vehicle, Officer Gilreath looked into the interior of the vehicle on the driver's side and observed a plastic bag with a white rock-like substance that he recognized as crack cocaine. He further observed the barrel of a black pistol sticking out from beneath the driver's seat. Photographs were introduced into evidence showing

the crack cocaine and pistol on the floor on the driver's side. The pistol was a Glock Model 17 with a 30-round extended magazine. There was one round in the chamber of the pistol.

Special Agent Andy Chapman with the FBI next testified that he performed the pat-down of defendant after defendant got out of the vehicle. He recovered $2,800 cash and two bags of marijuana from defendant's pants pockets. Agent Chapman also observed a bag of crack cocaine on the driver's side floor and the barrel of a gun sticking out from underneath the driver's seat. Based on the evidence presented, it was reasonable for the jury to conclude that defendant was guilty of possession and distribution of five grams or more of crack cocaine on July 16, 2007, and his convictions as to Counts Two and Three are affirmed.

C.  Sufficient evidence supports defendant's conviction for possession of a firearm in furtherance of drug trafficking and for possession of a firearm by a convicted felon.

In order to convict defendant of Count Four, the jury had to find beyond a reasonable doubt that (1) defendant committed the drug trafficking offenses charged in the superseding indictment, (2) defendant knowingly possessed the firearm, and (3) the possession of the firearm was in furtherance of the drug trafficking crimes charged in the superseding indictment. *United States v. Smith,* 182 F.3d 452 (6th Cir. 1999). In order to convict defendant of Count Five, the jury had to find beyond a reasonable doubt that (1) defendant had a prior felony conviction, (2) defendant knowingly possessed the firearm,

-8-

and (3) the firearm had traveled in interstate commerce. *United States v. Sawyers,* 409 F.3d 732, 735 (6th Cir. 2005).

Defendant challenges his convictions as to Counts 4 and 5, stating that no witnesses testified that they saw defendant in physical possession of the firearm found in his vehicle on July 16, 2007. Defendant argues that his "mere presence in a car where a gun was found and proximity to a gun are insufficient proof of constructive possession." *United States v. Newsom*, 452 F.3d 593, 609 (6th Cir. 2006). In addition, defendant states that the vehicle belonged to his cousin, Andrina Bennett, and there was no evidence that the vehicle had been purchased by defendant or registered to defendant. Defendant also states that Agent Nocera provided conflicting testimony about the location of the firearm. Defendant avers that Agent Nocera testified that the firearm was found underneath the driver's seat of the vehicle and he also testified on July 17, 2007, the date after the alleged sale, that the firearm was found underneath the passenger's seat. Finally, there was no fingerprint evidence or any scientific evidence linking the firearm to the defendant.

A firearm is possessed in "furtherance of" a drug trafficking offense if there is a nexus between the firearm and the crime; if it advances, promotes, or facilitates the crime. *United States v. Paige,* 470 F.3d 603, 609 (6th Cir. 2006). The standards under which courts evaluate the sufficiency of the evidence are summarized as follows:

> The possession of a firearm on the same premises as a drug transaction would not, without a showing of a connection between the two, sustain a § 924(c) conviction. In order for the

-9-

> possession to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use. Other factors that may be relevant to a determination of whether the weapon was possessed in furtherance of the crime include whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found.

*United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001). The *Mackey* court noted that these other factors may help "to distinguish possession in furtherance of a crime from innocent possession of an antique firearm or an unloaded hunting rifle locked in a cupboard." *Id.* Although defendant is correct that mere possession of a firearm in the same premises where drug trafficking takes place is insufficient, "a jury can reasonably infer that firearms which are strategically located so as to provide defense or deterrence in furtherance of the drug trafficking are used in furtherance of a drug trafficking crime." *United States v. Swafford*, 385 F.3d 1026, 1028-29 (6th Cir. 2004).

Moreover, possession may be either actual or constructive. Actual possession means that the defendant had physical control over the weapon, whereas constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. *Gardner*, 488 F.3d at 713. Moreover, proof that the person has dominion over the premises where the firearm is located is sufficient to establish constructive possession. *Id.* Both actual and constructive possession

may be proved by circumstantial evidence. *United States v. Murphy,* 107 F.3d 1199, 1208 (6th Cir. 1997).

In this case, the uncontroverted testimony showed that defendant was the only person observed seated in the front driver's seat and the only person observed operating the vehicle on July 16, 2007. Defendant admits that he was driving the vehicle on that date. Defendant was observed sitting in the vehicle where the firearm and drugs were recovered.

Calvin Johnson also testified that he cleaned the exterior of the vehicle and was starting to clean the interior of the vehicle when the officers arrived. Johnson stated that he was only inside the passenger side of the vehicle for approximately "ten seconds." Thus, he never had the opportunity to place or remove any item from the vehicle. In addition, the officers testified that the firearm was partially in plain view underneath the driver's seat. Photographs introduced at trial show that the handle of the firearm was clearly protruding from underneath the seat, close to the pedals of the vehicle. The defendant was seated in the driver's seat of the vehicle with the firearm at his feet in plain view, along with a bag containing crack cocaine. The crack cocaine was packaged in the same manner as the cocaine sold to the informant. There was law enforcement testimony about the link between firearms and narcotics trafficking, and defendant himself testified that he had previously been robbed. Several witnesses, including Dondi Warner and

-11-

Case 3:07-cr-00081-TWP-CCS   Document 163   Filed 05/29/09   Page 11 of 15   PageID #: 1366

James Alston, testified that defendant "always carried a firearm" during drug deals because of the prior robberies.

Moreover, Charles Elder testified that defendant carried a firearm during drug transactions and that he maintained the firearm underneath the seat or on the seat of the vehicle. He described the firearm for the jury. The description of the firearm given by Elder matched the firearm recovered by police. Viewing the totality of the circumstances, it was reasonable for the jury to conclude that defendant constructively possessed the firearm. Accordingly, defendant's convictions as to Counts Four and Five are affirmed.

D. The government's opening statement was not unfairly prejudicial to defendant.

After opening statements were concluded at trial, defendant moved for a mistrial based on statements made by the Government in its opening statement. The defendant avers that the government's opening statement regarding the defendant's stipulation concerning having previously been convicted of a felony may have confused or misled the jury into believing that the defendant had stipulated to the allegations contained in the superseding indictment in the instant case.

> Now, you already know the defendant has stipulated that he is a convicted felon. Defendant will stipulate that he's a convicted felon, sold drugs to a confidential informant. Unbeknownst to him, he sold the drugs while being watched by the FBI and the KPD. They arrested him and they found him in possession of a firearm as a convicted felon, along with a half-ounce of crack that he intended to sell. He possess that firearm in furtherance

-12-

> of the drug trafficking. And prior to all of that the defendant
> was engaged in a drug conspiracy involving over 50 grams of
> crack and over 5 kilograms of cocaine.
>
> I submit to you, ladies and gentlemen, that after hearing all of
> the evidence in this case that you will return the only verdict ....

The government submits that the transcript of the opening statement was read back after defendant's motion for a mistrial, and the court noted that there was no mention of the nature of defendant's prior felony conviction; therefore, the court overruled defendant's motion. "Improprieties in counsel's argument to the jury do not require a new trial unless they are so gross as probably to prejudice the defendant, and any resulting prejudice is not neutralized by the court's instructions." *United States v. Ashworth*, 836 F.2d 260, 267 (6th Cir. 1988). Here, assuming the prosecutor's statement was improper, which it was not, any resulting prejudice was neutralized by the court's later jury instruction that the jury's recollection of the evidence controlled and that the attorney's arguments were not evidence. Therefore, the court finds that the prosecutor's statement was not unfairly prejudicial to defendant.

E.       Defendant's proffered "new evidence" is insufficient to require a new trial.

In the motion for judgment of acquittal and/or for new trial, counsel for defendant states, that upon information and belief, he believes that witness Charles Elder spoke about his relationship with defendant with another inmate at the Blount County Detention Center. Counsel believes the inmate will testify that Elder told him that he had

-13-

never met defendant prior to being incarcerated together in 2007. Counsel further believes that this inmate will state that Elder did not even know that the two were cousins prior to this incarceration, and Elder had no prior dealings with the defendant at all. This information, counsel avers, would in be direct conflict with Elder's testimony at trial.

The government responds that defendant's proffer as to Charles Elder is insufficient to warrant a new trial. The court agrees. Federal Rule of Criminal Procedure 33 provides that a court may grant defendant's motion for a new trial "if it is necessary for the interests of justice. The decision to grant or deny such a motion rests within the discretion of the district court." *United States v. Seago,* 930 F.2d 482, 488 (6th Cir. 1991). "The defendant bears the burden of proving the need for a new trial and such motions should be granted sparingly and with caution." *Id.* Defendant must establish the following elements before a new trial will be granted: (1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching, and (4) the evidence would likely produce an acquittal. *United States v. O'Dell,* 805 F.2d 637, 640 (6th Cir. 1986).

Here, Defendant has failed to identify for the court the name of the witness or provide an affidavit supporting his assertions. The government postulates that the unnamed inmate is Keith Hicks. The government states that Hicks was interviewed by law enforcement personnel on or about January 23, 2009, and attaches a copy of the report. In the interview report, Hicks sets forth that defendant, not Charles Elder, stated that he did

-14-

not know that he and Elder were cousins prior to their incarceration. Moreover, assuming the truth of Hicks' statement to law enforcement, it is not inconsistent with Elder's testimony at trial. The statement is, at best, impeaching and would not likely produce an acquittal if the case were retried. "The mere existence of impeaching evidence does not warrant a new trial." *United States v. Davis*, 15 F.3d 526, 532 (6th Cir. 1994).

## **Conclusion**

For the reasons stated above, defendant's motions for judgment of acquittal or, in the alternative, for a new trial [Docs. 148, 157, 160] are **DENIED.**

ENTER:

    s/ Thomas W. Phillips
United States District Judge